UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. _____

JANA OLSEN and SCOTT OLSEN,
Individually, and as Parents and Natural
Guardians of K.O., minor,

      Plaintiffs,

v.

MAGICAL CRUISE COMPANY, LIMITED
d/b/a Disney Cruise Line,

      Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, JANA OLSEN and SCOTT OLSEN, Individually, and as Parents and Natural Guardians of K.O., minor, (at times collectively referred to herein as "Plaintiffs"), hereby sue Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a Disney Cruise Line, and for good cause allege:

## JURISDICTION AND PARTIES

1.      Plaintiffs are citizens of the United States and residents of Utah.

2.      At all times materials, Plaintiffs JANA OLSEN and SCOTT OLSEN are the parents and natural guardians of minor Plaintiff K.O.

3.      Defendant, MAGICAL CRUISE COMPANY, LIMITED (hereinafter "DISNEY"), is a foreign entity which has its principal place of business in Florida.

4.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the Court's admiralty jurisdiction.

5.     Defendant, DISNEY, at all times material, personally or through an agent:

    a.  Operated, conducted, engaged in or carried out a business venture in this state and/or county and/or had an office or agency in this state and/or county;

    b.  Was engaged in substantial business activity within this state;

    c.  Operated vessels in the waters of this state;

    d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

    e.  The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state; and/or

    f.  Issued cruise tickets to Plaintiffs that required suit be brought in this Court against the named Defendant in this action.

6.     Defendant is subject to the jurisdiction of the Courts of this state.

7.     The causes of action asserted in this Complaint arise under U.S. General Maritime Law.

8.     At all times material hereto, Defendant exclusively owned, operated, managed, maintained and/or controlled the subject cruise vessel, the *Disney Fantasy* (hereinafter the "vessel").

9.      At all times material hereto, Defendant operated the vessel in navigable waters.

10.     The voyage upon which this Complaint is based occurred between March 7 and March 14, 2020 (hereinafter referred to as the "subject voyage").

11.     Minor Plaintiff K.O. suffers from an autoimmune disease. As minor Plaintiff had compromised health conditions placing them at greater risk of contracting and suffering from the effects of COVID-19, Plaintiff JANA OLSEN contacted Defendant prior to embarking on Defendant's vessel to cancel or post-pone their cruise. Defendant notified Plaintiff JANA OLSEN that they could not cancel or re-book the cruise despite the COVID-19 concerns. Left without any option and having trusted Defendant would not place Plaintiffs in harm's way, the Plaintiffs embarked the Defendant's vessel on March 7, 2020.

12.     Plaintiff JANA OLSEN and minor Plaintiff, K.O., were passengers aboard Defendant's vessel between March 7 and March 14, 2020, and contracted SARS-CoV-2 (hereinafter "COVID-19") while aboard Defendant's vessel as a result of Defendant's careless conduct alleged herein.

13.     While aboard the vessel on or about March 12, 2020, Plaintiff, JANA OLSEN, began experiencing symptoms of COVID-19, suffering from body aches, coughing, followed by a cold, sore throat, fever, headache, numbness, loss of taste, loss of smell, and difficulty breathing and thereafter tested positive for COVID-19 and/or

Lipcon, Margulies & Winkleman, P.A.
www.lipcon.com

its antibodies on or about May 1, 2020.

14.     While aboard the vessel on or about March 11, 2020, minor Plaintiff, K.O, began experiencing symptoms of COVID-19, suffering from sleep disturbance, cough, a cold, fatigue followed by a sore throat, headache, fever, and difficulty breathing.  On or about March 16, 2020, minor Plaintiff, K.O, was admitted to the hospital in intensive care unit (ICU) with a high fever and difficulty breathing, and thereafter tested positive for COVID-19 and/or its antibodies on or about May 1, 2020.

15.     Plaintiff, SCOTT OLSEN, was placed at an immediate risk of physically contracting COVID-19 from his family, and did in fact contract COVID-19 from them upon their disembarkation from the vessel once he came in contact with them.

16.     Shortly following disembarkation of JANA OLSEN and Minor, K.O., from the vessel, Plaintiff SCOTT OLSEN began experiencing symptoms of COVID-19, suffered from a cough, fever, numbness of his body to the right side, and severe nausea and thereafter tested positive for COVID-19 when tested on or about March 28, 2020.

17.     Plaintiffs, JANA OLSEN, K.O., and SCOTT OLSEN, were placed at an immediate risk of physically contracting COVID-19, and did in fact contract COVID-19.   Plaintiffs feared for their own lives as well as the lives of each other.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

18.   This lawsuit deals with DISNEY's careless and continuous failure to reasonably protect Plaintiffs from a COVID-19 outbreak aboard the vessel as well as their family member when they returned home from the subject cruise, here specifically, Plaintiff, SCOTT OLSEN[1].

19.   DISNEY's failure to act reasonably toward Plaintiffs as it pertains to the COVID-19 outbreak aboard the vessel is highlighted by the fact that DISNEY knew, before and during the subject voyage, of the dangerous conditions and/or explosive contagiousness presented by a COVID-19 outbreak aboard the vessel[2] during the course of the subject voyage.

20.   Plaintiffs, JANA OLSEN and minor, K.O., and other passengers during the subject voyage were permitted to congregate in close proximity to one another for buffet/group dining aboard the vessel without physical distancing requirements.

### DISNEY knew of the dangerous conditions associated with COVID-19, including its extreme contagiousness, before the subject voyage

21.   Before the subject voyage, DISNEY knew and/or should have known of the

---

[1] *See e.g. McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992) (recognizing a duty of care can extend off the tortfeasor's premises if the tortfeasor's conduct creates a "foreseeable zone of risk" to third-parties).

[2] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html; and Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order*, https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (hereinafter collectively referred to as the "Memorandums").

dangerous conditions associated with COVID-19, including <u>its manifestations</u> –
severe pneumonia, acute respiratory distress syndrome (ARDS), septic shock
and/or multi-organ failure[3] – <u>its symptoms</u> – fever, dry cough, and/or shortness
of breath[4] – as well as the high fatality rate associated with contracting the virus.[5]

22.     The dangerous conditions associated with COVID-19, of which DISNEY
also knew and/or should have known, also include <u>its extreme contagiousness</u>.
For example, a person with COVID-19 infects, on average, another 2.5 people, and
COVID-19 is therefore more contagious than Ebola or Influenza.[6]

23.     As a result of its careless conduct further detailed below, DISNEY
negligently exposed Plaintiffs to COVID-19. Such harm and damages include, but
is not limited to, Plaintiffs' pain and suffering including severe flu-like symptoms
who all did actually suffer from fever, extreme fatigue, body aches, severe cough,

---

[3] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html; Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order*, https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

[4] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html; Mayo Clinic, *Symptoms and Causes*, https://www.mayoclinic.org/diseases-conditions/coronavirus/symptoms-causes/syc-20479963 (last accessed July 27, 2020).

[5] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html; Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (identifying a 3.6% global fatality rate); Journal of the American Medical Association, *Case-Fatality Rate and Characteristics of Patients Dying in relation to COVID-19 in Italy*, https://jamanetwork.com/journals/jama/fullarticle/2763667 (identifying a 7.2% and 2.3% fatality rate in Italy and China, respectively).

[6] Popular Science, *COVID-19 Contagiousness*, https://www.popsci.com/story/health/how-diseases-spread/ (publish date February 20, 2020; last accessed July 27, 2020).

lung injuries and/or permanently reduced lung capacity.

24.     Further, DISNEY did not at any time during the subject voyage enact quarantine and/or physical distancing measures amongst passengers and/or crew members aboard the vessel.

25.     DISNEY continued to allow passengers, including Plaintiffs, JANA OLSEN and minor, K.O., to eat in buffets settings, provide group entertainment activities aboard the vessel (such as dancing) and otherwise allowed passengers to fully participate in the subject cruise as if there was no COVID-19 outbreak or threat thereof aboard the vessel.

## Background on the worldwide spread of COVID-19

26.     Since December 2019, there has been a worldwide outbreak of COVID-19, which is now considered a pandemic. The virus originated in China, and quickly spread throughout Asia, Europe, and most recently, North America.

27.     To date and worldwide, there have been over sixteen million confirmed cases and over four hundred thousand deaths as a result of the COVID-19 pandemic.

28.     On or about February 13, 2020, the Center for Disease Control (hereinafter the "CDC") published the *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected

COVID-19 infections aboard ships, like the vessel named herein. *See* the Memorandum cited at footnote 2.

29.    In view of the fact that Defendant, DISNEY, has its principal place of business in Florida and operates numerous cruise vessels which originate from and/or stop at ports within the U.S., Defendant, DISNEY, knew and/or should have been aware of this Memorandum, including, but not limited to, the dangerous conditions and/or explosive contagiousness associated with COVID-19 and its likely presence aboard Defendant's vessel at the commencement of the subject voyage.

30.    This Memorandum provided cruise vessel operators, like DISNEY, with numerous helpful considerations to assist in detecting and preventing the spread of COVID-19 amongst its crew members, passengers and its vessels at large, some of which include:

- "Early detection, prevention, and control of Coronavirus Disease 2019 (COVID-19) on ships **is important** to protect the health of travelers on ships and to avoid transmission of the virus by disembarking passengers and crew members who are suspected of having COVID-19";

- "Identifying and isolating passengers and crew with possible symptoms of COVID-19 as soon as possible **is needed** to minimize transmission of this virus";

- "To reduce spread of respiratory infections including COVID-19, CDC **recommends** that ships encourage crew members and passengers to

- ▪ Postpone travel when sick

- ▪ Watch their health

- ▪ Self-isolate and inform the onboard medical center immediately if they develop a fever (100.4ºF / 38ºC or higher), begin to feel feverish, or develop other signs or symptoms of sickness

- ▪ Use respiratory, cough, and hand hygiene

  - • Advise passengers and crew of the importance of covering coughs and sneezes with a tissue. Dispose used tissues immediately in a disposable container (e.g., plastic bag) or a washable trash can.

  - • Remind passengers and crew members to wash their hands often with soap and water, especially after coughing or sneezing. If soap and water are not available, they can use a hand sanitizer containing 60%-95% alcohol)"

- • "**Deny boarding of a passenger or crew member** who is suspected to have COVID-19 infection based on signs and symptoms plus travel history in China or other known exposure at the time of embarkation";

- • "Passengers and crew members who have had high-risk exposures to a person suspected of having COVID-19 **should be** quarantined in their cabins. All potentially exposed passengers, cruise ship medical staff, and crew members **should** self-monitor under supervision of ship medical staff or telemedicine providers until 14 days after the last possible exposure";

- • "**Isolate passengers or crew onboard** who are suspected of having COVID-19 infection in a single-occupancy cabin with the door closed until symptoms are improved."

*See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on*

*Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

31.     Moreover, Defendant, DISNEY, and the cruise industry at large, received an early, dire warning of how easily COVID-19 could spread on massive ocean liners when the first cases emerged aboard the *Diamond Princess*, a vessel owned by Princess Cruise Lines ("Princess"), which is owned by Carnival Corporation, in early February 2020 in Yokohama Harbor, Japan. The outbreak began with ten confirmed COVID-19 cases, which rapidly multiplied to seven hundred confirmed cases, as a result of Princess' flawed two-week quarantine of passengers and crew members aboard the *Diamond Princess*.

32.     As a result of the *Diamond Princess* crisis, on February 18, 2020, the CDC issued a statement providing that: "the rate of new reports of positives new on board [the *Diamond Princess*], especially among those without symptoms, **highlights the high burden of infection on the ship and potential for ongoing risk**."[7] Seven of the *Diamond Princess*' passengers ultimately died as a result of COVID-19 exposure aboard the vessel.

33.     On or about March 7, 2020, Vice President Mike Pence met with top cruise industry executives (including the CEOs of Carnival, Royal Caribbean and Norwegian cruise lines), in order to address the impact of COVID-19 on the cruise

---

[7]   Centers for Disease Control, *Update on the* Diamond Princess *Cruise Ship in Japan*, https://www.cdc.gov/media/releases/2020/s0218-update-diamond-princess.html (emphasis added).

industry, specifically. The next day, March 8, 2020, the U.S. Department of State, in conjunction with the CDC, set forth a recommendation **that U.S. citizens should not travel by cruise ship given the CDC's findings which support the "increased risk of infection of COVID-19 in a cruise ship environment**."[8]

34.     On or about March 14, 2020, the CDC issued its first No Sail Order.[9] The No Sail Order is/was applicable to cruise ship operators, like Defendant herein, and provided science updates known to that date pertaining to the explosive contagiousness associated with COVID-19 and how the virus presented dangerous conditions to passengers and crew members aboard cruise ships, like the vessel named herein. For example, the CDC's first No Sail Order stated the following:

- "Like other close-contact environments, cruise ships facilitate transmission of COVID-19."

- "There are several features of cruise ships that increase the risk of COVID-19 transmission."

- "A hallmark of cruise travel is the number and variety of person-to-person contacts an individual passenger may have daily."

- "The dynamics of passenger-to-passenger, passenger-to-crew, crew-to-passenger, and crew-to-crew intermingling in a semi-closed setting are particularly conducive to SARS-CoV-2 spread, resulting in high

---

[8]     *See* U.S. Dept. of State, March 8, 2020 *No Sail On Cruise Ships Recommendation* https://travel.state.gov/content/travel/en/international-travel/before-you-go/travelers-with-special-considerations/cruise-ship-passengers.html?fbclid=IwAR23mRlu4-382HLuSM8i0KWQBSaZ4heDniggmxR3kBR6e2EgWiKr6B0EseM.

[9]     *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

transmission rates."

- "Cruises include frequent events that bring passengers and crew close together, including group and buffet dining, entertainment events, and excursions. Cruise ship cabins are small, increasing the risk of transmission between cabinmates."

- "Close quartering is a particular concern for crew, who typically eat and sleep in small, crowded spaces."

- "Infection among crew members may lead to transmission on sequential cruises on the same vessel because crew members may continue working and living onboard the ship from one cruise to the next."

- "Crew from one ship may in turn serve onboard multiple different ships for subsequent voyages, which also has the potential to amplify transmission."

*See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf (emphasis added).

35.     Outlined below is a timeline of events that supports all claims asserted by Plaintiffs herein. More specifically, this timeline supports DISNEY having actual knowledge of the dangerous conditions and/or explosive contagiousness associated with COVID-19 aboard the subject vessel at the same time DISNEY dangerously and continuously exposed its passengers, including Plaintiffs herein, to the deadly COVID-19:

  a.  <u>December 31, 2019</u> – The local government in Wuhan, China, confirmed with the World Health Organization (hereinafter "WHO") that local health authorities in Wuhan were treating an influx of dozens of patients with what appeared to be novel cases of

pneumonia with an unknown cause.

b. <u>January 5-7, 2020</u> – China announced that the novel pneumonia cases in Wuhan were not caused by severe acute respiratory syndrome (hereinafter "SARS") or middle-east respiratory syndrome (hereinafter "MERS") – but COVID-19 – which belongs to the highly-contagious family of coronaviruses, including SARS and MERS.

c. <u>January 11, 2020</u> – The Wuhan Municipal Health Commission announced the first death caused by COVID-19.

d. <u>January 20, 2020</u> – A situation report published by the WHO confirmed COVID-19 cases outside of mainland China in Thailand, Japan and South Korea, which the WHO believed to have been exported from Wuhan, China. The situation report also identified 282 positive COVID-19 diagnoses worldwide with 278 of those positive cases within China.

e. <u>January 21, 2020</u> – A man in Washington State, U.S.A., became the first known person diagnosed with COVID-19 in the U.S.A.

f. <u>January 23, 2020</u> – Chinese authorities take the <u>unprecedented</u> measure of closing off Wuhan – a city of over 11,000,000 people – to stop the spread of COVID-19.

g. <u>January 30, 2020</u> – WHO declared COVID-19 a "global health emergency" – recognizing that COVID-19 posed a risk beyond China. The U.S. Department of State issued a Level 4 (highest level) travel advisory as it related to U.S. citizens who planned to travel to China.

h. <u>February 2, 2020</u> – China reports that the death toll from COVID-19 in mainland China (361) exceeded the death toll in mainland China from the SARS outbreak in the early 2000s (349).

i. <u>February 5, 2020</u> – Chinese officials announced that nearly 500 people in mainland China have died as a result of COVID-19.

j. <u>February 5, 2020 (*Diamond Princess*)</u> – Passengers aboard the *Diamond Princess* near Yokohama, Japan began a two-week quarantine after nine (9) passengers and one (1) crew member tested positive for

COVID-19 while aboard the vessel.

k. **On or about February 13, 2020 – The CDC published the Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019, which provided guidance for ship operators, including cruise ship operators, to help prevent, detect, and medically manage suspected COVID-19 infections.**[10]

l. February 19-25, 2020 (*Diamond Princess*) – Following the two-week quarantine aboard the *Diamond Princess*, Japanese officials announced that of the 3,711 passengers aboard the vessel, over 700 tested positive for COVID-19 (**18.8%**) – the largest cluster of positive COVID-19 cases outside of mainland China at that time.

36.    Based on the foregoing timeline, DISNEY knew and/or should have known of the dangerous conditions and/or explosive contagiousness associated with COVID-19 aboard the subject vessel as early as February 13, 2020 when the CDC published its *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*.

## COUNT I – NEGLIGENT FAILURE TO WARN

Plaintiffs, JANA OLSEN and minor, K.O., re-allege, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-six (36), as though alleged originally herein, and further alleges:

37.    It was the duty of Defendant to provide Plaintiffs, JANA OLSEN and minor, K.O., with reasonable care under the circumstances, which included a duty to

---

[10] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

warn Plaintiffs, JANA OLSEN and minor, K.O., of known dangerous conditions aboard the vessel and/or in specific areas where Defendant invited Plaintiffs to occupy and/or reasonably foresaw that Plaintiffs, JANA OLSEN and minor, K.O., would occupy, such as common areas and/or the dining rooms.

38. At all times material, the presence of COVID-19 aboard the vessel constituted a dangerous condition, of which Defendant had prior knowledge and/or acquired such knowledge during the subject voyage, for the reasons outlined above.

39. Defendant and/or its agents, servants, and/or employees breached its duty to warn Plaintiffs, JANA OLSEN and minor, K.O., of the dangerous conditions associated with COVID-19 aboard the vessel by:

  a. Failing to adequately and/or timely warn Plaintiffs, JANA OLSEN and minor, K.O., of the dangers and/or risks, known to Defendant, of contracting COVID-19 aboard the vessel, including, but not limited to, how easily the virus could spread in a cruise ship setting;

  b. Failing to reasonably warn Plaintiffs, JANA OLSEN and minor, K.O., of how to reasonably prevent and/or mitigate the risk of contracting COVID-19 aboard the vessel; *e.g.,* to avoid all unnecessary contact with other passengers during the voyage and/or not engage in group/buffet dining; and/or

    c. Failing to adequately and/or timely directly warn Plaintiffs, JANA OLSEN and minor, K.O., of other passengers and/or crew who complained to Defendant and/or the medical professionals aboard the vessel that they had symptoms consistent with a positive COVID-19 diagnosis so that Plaintiffs, JANA OLSEN and minor, K.O., could reasonably protect themselves to the greatest extent possible.

40.    The above breach of the duty of care caused and/or contributed to Plaintiffs, JANA OLSEN and minor, K.O., contracting COVID-19 and/or medical complications arising from it because Plaintiffs, JANA OLSEN and minor, K.O., would not have participated in the subject cruise to the extent that they did had Defendant adequately warned them of the foreseeable risk and/or danger pertaining to the COVID-19 outbreak and of the safety measures to combat the COVID-19 outbreak aboard the vessel.

41.    Defendant knew of the foregoing conditions causing Plaintiffs, JANA OLSEN and minor, K.O., to contract COVID-19 and/or be exposed to an actual risk of physical injury resulting from it and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

42.    As a result of Defendant's negligence, Plaintiffs, JANA OLSEN and minor,

K.O., contracted COVID-19 aboard the vessel. In addition, Plaintiffs were injured about their body and extremities, including fever, fatigue and lung damage and/or lung injury, suffered both physical pain and suffering, mental and emotional anguish (*e.g.*, anxiety and depression), lost enjoyment of life, suffered temporary and/or permanent disability (*e.g.*, physical and emotional fatigue), inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, incurred medical expenses in the care and treatment of their injuries, lost wages and Plaintiff, JANA OLSEN's working abilities and earning capacity has become impaired. Plaintiffs' injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiffs, JANA OLSEN and minor, K.O., demand judgment for all damages recoverable under the law against the Defendant, and demand trial by jury.

## COUNT II – NEGLIGENT MANAGEMENT OF INFECTIOUS DISEASE OUTBREAK ABOARD VESSEL

Plaintiffs, JANA OLSEN and minor, K.O., re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-six (36), as though alleged originally herein, and further allege:

43.    It was the duty of Defendant to provide Plaintiffs, JANA OLSEN and minor, K.O., with reasonable care under the circumstances, including a duty to reasonably and/or safely manage the outbreak of known infectious disease aboard

the vessel.

44.   At all times material, Defendant had exclusive control of all crew members aboard the vessel, including medical personnel, for the purpose of managing an outbreak of infectious disease aboard the vessel.

45.   At all times material, Defendant had in place policies and procedures promulgated for the purpose of responding to an infectious disease outbreak aboard the vessel.

46.   Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs, JANA OLSEN and minor, K.O., with a reasonably safe infectious disease response aboard the vessel by:

   a.  Failing to take necessary and adequate action to prevent and/or mitigate an outbreak of COVID-19 aboard the vessel when Defendant knew or should have known that such an outbreak was going to occur and/or had already occurred aboard the vessel;

   b.  Failing to take reasonably available and adequate precautions in connection with passengers and/or crew who exhibited symptoms of COVID-19 aboard the vessel (*e.g.* timely quarantining passengers and/or crew members infected with COVID-19 and/or who exhibited symptoms consistent with a COVID-19 diagnosis) so that such symptoms could be timely diagnosed and/or managed in

relation to other passengers aboard the vessel who could and/or likely would contract same;

c.  Failing to timely perform available testing on all ill passengers and/or crew aboard the vessel to confirm the type and nature of their illness in order to rule out COVID-19 and its potential spread to other passengers and/or crew members; and/or

d.  Failing to timely and/or reasonably enforce Defendant's infectious disease outbreak policies and/or procedures aboard the vessel, including but not limited to activating the correct and/or responsible Outbreak Prevention Plan ("OPP") level, upon learning that an infectious disease outbreak (COVID-19) was occurring or could occur aboard the vessel.

47.   The above breach of the duty of care caused and/or contributed to Plaintiffs, JANA OLSEN and minor, K.O., contracting COVID-19 and/or medical complications arising from it because Plaintiffs, JANA OLSEN and minor, K.O., would not have contracted COVID-19 and/or been unreasonably exposed to contracting same had Defendant reasonably and/or safely managed the infectious disease outbreak aboard the vessel.

48.   Defendant knew of the foregoing conditions causing Plaintiffs, JANA OLSEN and minor, K.O., to contract COVID-19 and/or be exposed to an actual

risk of physical injury resulting from it and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

49.     As a result of Defendant's negligence, Plaintiffs, JANA OLSEN and minor, K.O., contracted COVID-19 aboard the vessel. In addition, Plaintiffs, JANA OLSEN and minor, K.O., were injured about their body and extremities, including fever, fatigue and lung damage and/or lung injury, suffered both physical pain and suffering, mental and emotional anguish (*e.g.,* anxiety and depression), lost enjoyment of life, suffered temporary and/or permanent disability (*e.g.,* physical and emotional fatigue), inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, incurred medical expenses in the care and treatment of their injuries, lost wages and Plaintiff, JANA OLSEN's working abilities and earning capacity has become impaired. Plaintiffs, JANA OLSEN and minor, K.O., injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiffs, JANA OLSEN and minor, K.O., demand judgment for all damages recoverable under the law against the Defendant, and demand trial by jury.

## COUNT III – NEGLIGENT BOARDING

Lipcon, Margulies & Winkleman, P.A.
www.lipcon.com

Plaintiffs, JANA OLSEN and minor, K.O., re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-six (36), as though alleged originally herein, and further allege:

50.    At all times material, Defendant exclusively controlled the process of how passengers and crew members boarded the vessel, at the beginning of the voyage and at all subsequent ports of call at which Defendant permitted passengers, crew and/or other individuals to board and/or disembark the vessel.

51.    It was the duty of Defendant to provide Plaintiffs, JANA OLSEN and minor, K.O., with reasonable care under the circumstances, including but not limited to, the provision of a reasonably safe boarding method in view of the knowledge Defendant possessed pertaining to the threat of COVID-19 worldwide and aboard Defendant's vessel, as outlined above.

52.    Defendant's negligent decisions made in regards to boarding people before the commencement of the subject voyage, further outlined below, were formulated and called to be executed by Defendant from its shoreside office(s).

53.    Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs, JANA OLSEN and minor, K.O., with a reasonably safe boarding by:

      a.    Failing to have adequate medical personnel stationed on land during the initial boarding process before the subject voyage commenced to

adequately and/or reasonably evaluate passengers and/or crew members to determine whether to allow boarding to those who plainly and/or objectively exhibited symptoms consistent with a positive COVID-19 diagnosis; *e.g.*, checking the temperature of all those who sought to board the vessel for fever and/or evaluation of their potential respiratory symptoms/distress.

b. Failure to have adequate medical personnel aboard the vessel and/or shoreside responsible for the boarding process of passengers and/or crew members to determine whether to allow boarding to passengers and/or crew members in accordance with CDC guidelines available at the time of boarding.[11]

c. Failing to reasonably restrict nonessential individuals' access to the vessel (including, but not limited to DISNEY's shoreside personnel, independent contractors, crew members, etc.) once DISNEY acquired notice of the dangerous conditions and/or explosive contagiousness associated with COVID-19 potentially aboard the vessel.

d. Continuing to allow passengers, including Plaintiffs, to congregate in close proximity to one another and/or eat in buffet settings

---

[11] *See* Centers for Disease Control and Prevention, *Interim Guidance for Ships on Managing Suspected Coronavirus Disease 2019*, (last updated February 18, 2020) https://www.cdc.gov/quarantine/maritime/recommendations-for-ships.html.

aboard the vessel (i.e. not enforcing physical distancing measures) and/or providing passengers with entertainment, activities and dining options when the CDC issued considerations to cruise ship operators as it pertained to the potential spread of COVID-19 aboard cruise vessels.

54.     The above breach of the duty of care caused and/or contributed to Plaintiffs, JANA OLSEN and minor, K.O., contracting COVID-19 and/or medical complications arising from it because the COVID-19 outbreak aboard the vessel would not have occurred but for Defendant's failure to provide a reasonably safe boarding process (per CDC guidelines) and failure to reasonably restrict nonessential individuals from boarding the vessel.

55.     Defendant knew of the foregoing conditions causing Plaintiffs, JANA OLSEN and minor, K.O., to contract COVID-19 and/or be exposed to an actual risk of physical injury resulting from it and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

56.     As a result of Defendant's negligence, Plaintiffs, JANA OLSEN and minor, K.O., contracted COVID-19 aboard the vessel. In addition, Plaintiffs, JANA OLSEN and minor, K.O., were injured about their body and extremities, including

fever, fatigue and lung damage and/or lung injury, suffered both physical pain and suffering, mental and emotional anguish (*e.g.,* anxiety and depression), lost enjoyment of life, suffered temporary and/or permanent disability (*e.g.,* physical and emotional fatigue), inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, incurred medical expenses in the care and treatment of their injuries, lost wages and Plaintiffs, JANA OLSEN's working abilities and earning capacity has become impaired. Plaintiffs' injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiffs, JANA OLSEN and minor, K.O., demand judgment for all damages recoverable under the law against the Defendant, and demand trial by jury.

## COUNT IV – GENERAL NEGLIGENCE

Plaintiffs, JANA OLSEN and minor, K.O., re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-six (36), as though alleged originally herein, and further allege:

57.     It was the duty of Defendant to provide Plaintiffs, JANA OLSEN and minor, K.O., with reasonable care under the circumstances.

58.     Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs, JANA OLSEN and minor, K.O., with reasonable care under

the circumstances by:

    a. Continuing to allow passengers, including Plaintiffs, JANA OLSEN and minor, K.O., to congregate in close proximity to one another and/or eat in buffet settings aboard the vessel (*i.e.* not enforcing physical distancing measures);

    b. Failing to adequately sanitize and/or disinfect the vessel, including, but not limited to, the vessel's common areas, passengers' cabins and/or plates, cups, food trays, utensils, ice machines and drinking fountains to be used by passengers; and/or

    c. Failing to timely enact lockdowns of passengers and all non-essential personnel aboard the vessel once DISNEY acquired notice of the dangerous conditions and/or explosive contagiousness associated with COVID-19 aboard the vessel.

59. The above breach of the duty of care caused and/or contributed to Plaintiffs, JANA OLSEN and minor, K.O., contracting COVID-19 and/or medical complications arising from it because Plaintiffs would not have contracted COVID-19 and/or been unreasonably exposed to contracting same had Defendant exercised reasonable care under the circumstances by enforcing physical distancing measures, adequately sanitizing the vessel, and/or by timely enacting a vessel lockdown.

60.     Defendant knew of the foregoing conditions causing Plaintiffs, JANA OLSEN and minor, K.O., to contract COVID-19 and/or be exposed to an actual risk of physical injury resulting from it and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

61.     As a result of Defendant's negligence, Plaintiffs, JANA OLSEN and minor, K.O., contracted COVID-19 aboard the vessel. In addition, Plaintiffs, JANA OLSEN and minor, K.O., were injured about their body and extremities, including fever, fatigue and lung damage and/or lung injury, suffered both physical pain and suffering, mental and emotional anguish (*e.g.,* anxiety and depression), lost enjoyment of life, suffered temporary and/or permanent disability (*e.g.,* physical and emotional fatigue), inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, incurred medical expenses in the care and treatment of their injuries, lost wages and Plaintiffs, JANA OLSEN's working abilities and earning capacity has become impaired. Plaintiffs' injuries and damages are permanent or continuing in nature, and she will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiffs, JANA OLSEN and minor, K.O., demand judgment for all damages recoverable under the law against the Defendant, and demand trial by jury.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs, JANA OLSEN and minor, K.O., re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-six (36), as though alleged originally herein, and further alleges:

62. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendants, Plaintiffs, JANA OLSEN and minor, K.O., were placed in an immediate risk of physical harm and contracted COVID-19 while aboard the vessel.

63. It was the duty of Defendant to provide Plaintiffs, JANA OLSEN and minor, K.O., with reasonable care under the circumstances, which included a duty not to intentionally and/or recklessly inflict emotional distress on them during the subject voyage.

64. Plaintiffs, JANA OLSEN and minor, K.O., were in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

65. Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the

Plaintiffs, such as fear and anxiety, including, but not limited to, of contracting COVID-19. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, nightmares, and respiratory difficulties.

66.    During the subject voyage, Defendant and/or its agents, servants and/or employees were negligent in the following ways:

> a.  Failing to timely and/or adequately screen passengers on land before allowing them to board the vessel for the subject voyage, despite Defendant knowing of the escalating COVID-19 pandemic and the potential for an explosive COVID-19 outbreak aboard the vessel; and/or
>
> b.  Failing to restrict Plaintiffs, JANA OLSEN and minor, K.O., and passengers from buffet/group dining aboard the vessel, and failing to quarantine passengers to ensure physical distance requirements aboard the vessel rather than permitting passengers to congregate in close proximity to one another aboard the vessel for meals and/or entertainment.

67.    Due to Defendant's breach of the duty of care, outlined above, Plaintiffs, JANA OLSEN and minor, K.O., were placed in a foreseeable zone of risk of immediate physical impact.

68.     Specifically, Defendant knew of the risks and/or dangers in connection with COVID-19, its presence and/or likely presence aboard the vessel during the subject voyage, as well as the injuries it could cause Plaintiffs, JANA OLSEN and minor, K.O., if they physically contracted it; yet, as outlined above, Defendant failed to reasonably screen passengers prior to their boarding the vessel. As a result, Plaintiffs, JANA OLSEN and minor, K.O., were placed in a foreseeable zone of risk of immediate physical impact (*i.e.* physically contracting COVID-19 from other passengers and/or crew members while aboard the vessel and/or disembarking same).

69.     As a result of Defendant's negligence, Plaintiffs, JANA OLSEN and minor, K.O., contracted COVID-19 aboard the vessel. In addition, Plaintiffs, JANA OLSEN and minor, K.O., were injured about their body and extremities, including lung damage and/or lung injury, suffered both physical pain and suffering, mental and emotional anguish (*e.g.,* anxiety and depression), loss of enjoyment of life, temporary and/or permanent disability (*e.g.,* physical and emotional fatigue), inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, incurred medical expenses in the care and treatment of their injuries, lost wages and Plaintiff, JANA OLSEN's working abilities and earning capacity has become impaired. Plaintiffs, JANA OLSEN and minor, K.O., injuries and damages are permanent or continuing in nature, and she will suffer the losses and

impairments in the future. Plaintiffs, JANA OLSEN and minor, K.O., feared for their own lives as well as the lives of their loved ones.

70.     As a result of Defendant's negligence, Plaintiffs, JANA OLSEN and minor, K.O., were exposed to an actual risk of physical injury, which caused mental and emotional anguish with physical manifestations of that mental and emotional anguish including, but not limited to, sickness, nausea, exhaustion, fatigue, gastrointestinal difficulties, headaches, insomnia, lack of sleep, poor sleep, nightmares and/or respiratory difficulties.

        **WHEREFORE**, Plaintiffs, JANA OLSEN and minor, K.O., demand judgment for all damages recoverable under the law against the Defendant, and demand trial by jury.

### COUNT VI – NEGLIGENT FAILURE TO WARN
**(*Failure to Warn of Passengers/Crew with Positive COVID-19 Symptoms*)**

        Plaintiff, SCOTT OLSEN, re-alleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-six (36), as though alleged originally herein, and further alleges:

71.     It was the duty of Defendant to provide Plaintiff, SCOTT OLSEN with reasonable care under the circumstances, which included a duty to warn Plaintiff, SCOTT OLSEN of known dangerous conditions aboard the vessel, and by extension, dangerous conditions to which Plaintiff, SCOTT OLSEN, would foreseeably encounter (from Defendant's perspective) off the vessel as a result of

Defendant's careless conduct.

72.    Specifically, Defendant owed Plaintiff, SCOTT OLSEN, a duty of care because, as outlined within this count, Defendant's careless conduct created a "foreseeable zone of risk" to Plaintiff, SCOTT OLSEN, of contracting COVID-19 off the vessel; thereby creating a duty on the part of Defendant to lessen the risk it created. *See e.g. McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992) (recognizing a duty of care can extend off the tortfeasor's premises if the tortfeasor's conduct creates a "foreseeable zone of risk" to third-parties); *Whitt v. Silverman*, 788 So.2d 2019 (Fla. 2001) (similar).

73.    At all times material, the presence of COVID-19 aboard the vessel constituted a dangerous condition, of which Defendant had prior knowledge and/or acquired such knowledge during the subject voyage, for the reasons outlined above, and which from Defendant's perspective, would foreseeably cause harm to Plaintiff, SCOTT OLSEN, in the event Defendant's passengers, *e.g.* JANA OLSEN and minor K.O., contracted the virus aboard the vessel and brought it home with them to their family.

74.    Defendant and/or its agents, servants, and employees breached its duty to warn SCOTT OLSEN of the dangerous conditions associated with COVID-19 aboard the vessel by:

> a.  Failing to adequately and/or timely directly warn SCOTT OLSEN and/or indirectly through his wife and child, JANA OLSEN and

LIPCON,  MARGULIES  &  WINKLEMAN,  P.A.
WWW.LIPCON.COM

minor K.O., of other passengers and/or crew who complained to Defendant and/or the medical professionals aboard the vessel that they had symptoms consistent with a positive COVID-19 diagnosis, so that SCOTT OLSEN could reasonably protect himself to the greatest extent possible.

75.     The above breach of the duty of care caused and/or contributed to SCOTT OLSEN contracting COVID-19 because SCOTT OLSEN would have taken greater caution to prevent contracting COVID-19 had Defendant reasonably warned them of the foreseeable risk and/or danger pertaining to the COVID-19 outbreak aboard the vessel.

76.     Defendant knew of the foregoing conditions causing SCOTT OLSEN to contract COVID-19 and/or be exposed to an actual risk of physical injury resulting from it and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

77.     As a result of Defendant's negligence, SCOTT OLSEN contracted COVID-19. As a result of contracting the virus, SCOTT OLSEN suffered COVID-19 symptoms, such as respiratory distress, and were injured about his body and extremities (*e.g.* lung damage and/or lung injuries), suffered both physical pain and suffering (*e.g.* fever and fatigue), mental and emotional anguish (*e.g.* anxiety and depression), loss of enjoyment of life, temporary and/or permanent physical disability (*e.g.* physical and/or emotional fatigue), inconvenience in the normal

pursuits and pleasures of life, feelings of economic insecurity, incurred medical expenses in the care and treatment of his injuries, and his working abilities and earning capacities have been impaired. The injuries and damages are permanent or continuing in nature, and SCOTT OLSEN will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiff, SCOTT OLSEN, demands judgment for all damages recoverable under the law against the Defendant, and demands trial by jury.

## COUNT VII – NEGLIGENT MANAGEMENT OF INFECTIOUS DISEASE OUTBREAK ABOARD VESSEL
### (*Failure to Enforce Infectious Disease Policies and Procedures*)

Plaintiff, SCOTT OLSEN, re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through thirty-six (36), as though alleged originally herein, and further alleges:

78.    It was the duty of Defendant to provide Plaintiff, SCOTT OLSEN, with reasonable care under the circumstances, including a duty to reasonably and/or safely manage the outbreak of known infectious disease aboard the vessel and by extension, dangerous conditions to which Plaintiff, SCOTT OLSEN would foreseeably encounter (from Defendant's perspective) as a result of Defendant's careless conduct.

79.    Specifically, Defendant owed Plaintiff, SCOTT OLSEN a duty of care

Lipcon, Margulies & Winkleman, P.A.
WWW.LIPCON.COM

because, as outlined within this count, Defendant's careless conduct created a "foreseeable zone of risk" to Plaintiff, SCOTT OLSEN of contracting COVID-19 off the vessel; thereby creating a duty on the part of Defendant to lessen the risk it created. *See e.g. McCain v. Fla. Power Corp.*, 593 So.2d 500, 503 (Fla. 1992) (recognizing a duty of care can extend off the tortfeasor's premises if the tortfeasor's conduct creates a "foreseeable zone of risk" to third-parties; *Whitt v. Silverman*, 788 So.2d 2019 (Fla. 2001) (similar).

80.   At all times material, the presence of COVID-19 aboard the vessel constituted a dangerous condition, of which Defendant had prior knowledge and/or acquired such knowledge during the subject voyage, for the reasons outlined above, and which from Defendant's perspective, would foreseeably cause harm to Plaintiff, SCOTT OLSEN, in the event Defendant's passengers, *e.g.* JANA OLSEN and minor K.O., contracted the virus aboard the vessel and brought it home with them to their family.

81.   At all times material, Defendant had exclusive control of all crew members aboard the vessel, including medical personnel, for the purpose of managing an outbreak of infectious disease aboard the vessel.

82.   At all times material, Defendant had in place policies and procedures promulgated for the purpose of responding to an infectious disease outbreak aboard the vessel.

83.     Defendant and/or its agents, servants, and/or employees breached its duty to provide Plaintiff, SCOTT OLSEN with a reasonably safe infectious disease response by:

   a.  Failing to timely and/or reasonably enforce Defendant's infectious disease outbreak policies and/or procedures aboard the vessel upon learning that an infectious disease outbreak (COVID-19) was occurring aboard the vessel so that the COVID-19 outbreak aboard the vessel would be contained, mitigated or at least traceable.

84.     The above breach of the duty of care caused and/or contributed to SCOTT OLSEN contracting COVID-19 and/or medical complications arising from it because Plaintiff, SCOTT OLSEN would not have contracted COVID-19 and/or been unreasonably exposed to contracting same had Defendant reasonably and/or safely managed the infectious disease outbreak aboard the vessel.

85.     Defendant knew of the foregoing conditions causing Plaintiff, SCOTT OLSEN to contract COVID-19 and/or be exposed to an actual risk of physical injury resulting from it and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

86.     As a result of Defendant's negligence, Plaintiff, SCOTT OLSEN contracted COVID-19. As a result of contracting the virus, Plaintiff, SCOTT OLSEN suffered COVID-19 symptoms, such as respiratory distress, and was injured about his body and extremities (*e.g.* lung damage and/or lung injuries), suffered both physical

pain and suffering (*e.g.* fever and fatigue), mental and emotional anguish (*e.g.* anxiety and depression), loss of enjoyment of life, temporary and/or permanent physical disability (*e.g.* physical and/or emotional fatigue), inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, incurred medical expenses in the care and treatment of his injuries, and his working abilities and earning capacities have been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiff, SCOTT OLSEN will suffer the losses and impairments in the future.

**WHEREFORE**, Plaintiff, SCOTT OLSEN, demands judgment for all damages recoverable under the law against the Defendant, and demands trial by jury.

Dated: June 8, 2021                    Respectfully submitted,

> LIPCON, MARGULIES
> & WINKLEMAN, P.A.
> *Attorneys for Plaintiff*
> One Biscayne Tower, Suite 1776
> 2 S. Biscayne Boulevard
> Miami, Florida 33131
> Telephone No.: (305) 373-3016
> Facsimile No.: (305) 373-6204
>
> By:  */s/ Stefanie A. Black*
> **JASON R. MARGULIES**
> Florida Bar No. 57916
> jmargulies@lipcon.com
> **STEFANIE A. BLACK**
> Florida Bar No. 111903
> sblack@lipcon.com